of the day is in appeal number 23-1646, the United States v. Marzette. Okay, Ms. Wienkowski, good morning, whenever you're ready. Good morning, Your Honor, and may it please the Court. My name is Elizabeth Wienkowski, and I represent the appellant, Zebulon Marzette. At trial, the government relied on impermissible double hearsay that people were pounding at the door and waving guns to prove that Mr. Marzette constructively possessed a gun on or about September 20, 2019. The government used this statement not as context for a straightforward investigation, but to place a gun in Mr. Marzette's hands on the day in question. There was no other support in the record for the government's statements at opening and closing that Mr. Marzette was part of the dispute where a gun was being brandished at the Falcon Court apartment complex and that he was handling a gun aggressively. This was plain error that affected Mr. Marzette's substantial rights and warrants reversal. The statement at issue is double hearsay, in which an anonymous 911 caller reported to a dispatcher that people were pounding and waving guns. The dispatcher then relayed that statement to Sergeant Miranda Baker, who testified at trial about the contents of the statement. Whether a statement is hearsay depends on the purpose for which it is offered. The government argues here that the statement should be admissible under the course of investigation exception to the hearsay rule to show that it was offered as context for the officer's investigation and to show the manner in which they conducted their investigation. That argument should be rejected. This was not a complex investigation. Everything the jury needed to know about the discovery of the gun and the officer's interactions with Mr. Marzette occurred in the context of the traffic stop. Officer Brian Watkins testified that during that traffic stop he observed marijuana in plain view and it was what appeared to be marijuana in plain view and it was the view of that potential marijuana that gave him authority to search the vehicle. He was then told he testified by Jessica Tipton, the passenger of the vehicle, who also did not testify at trial. He was told by her to look for a gun in the back seat. So based on that, that was all the jury needed to know about the investigation. Mr. Marzette was near the vehicle at the time. That is clear from the record. That a gun was being pounded and waving earlier really had nothing to do with the investigation. This was not the type of situation where more context was needed. Would the jury have still learned that from Marzette's words himself that he was called over to help his sister with some sort of issue she was having at the apartment complex and that it was a disturbance? Yes, Your Honor. The jury would have learned that there was a disturbance, that officers were acting on a call for service. There is testimony in the record where Marzette told Sergeant Baker that his sister had called him because people were waving guns. But we would submit that that is very different from the 911 call, the pounding and waving, where the government said during its opening statement that people were brandishing guns at the apartment complex and then directly tied Mr. Marzette to that brandishing by saying that he was part of that dispute and those people actually called the cops on him. So I think the distinction with what Mr. Marzette's sister said and the 911 call is that the 911 call was used to portray Mr. Marzette as the cause of the disturbance, whereas his sister's statement didn't do that. Do you agree, Ms. Wienkowski? We're only reviewing for plain air, right? You seem to agree with that in your brief. Yes. Yeah, and given the statement that you just recounted that he made, how does this result in any prejudice, right? Because, I mean, his statement explains why he came over, makes sense why the police would be there as well, and then the DNA is found on the gun, on the trigger. I think the factors here amply support a finding of prejudice. The only disputed issue in this felon in possession case was possession, and as you mentioned, yes, DNA was recovered from the trigger of the gun only, a mixture with Mr. Marzette and others. We believe there are problems with the chain of custody of that evidence as well. But, of course, that DNA evidence alone would show at most that Mr. Marzette may have touched the gun at some point in the past, not that he constructively possessed it on or about the day in question. And I think what is so problematic about the pounding and waving statement and what is unique about that statement is that it really goes to constructive possession because it reflects an intention to exercise dominion and control over the gun in the way that other statements wouldn't, in the way that my sister called me to the apartment complex for help. Can you walk me through how you read the government's saying that he was the cause of the disturbance and he was the one pounding and waving when the jury also heard him say he was called just like the police were called, basically, because there was a disturbance and he was called by his sister and he came over, which would mean he was not the person pounding and waving. I'm just trying to understand how you read the government as saying he was the cause versus a participant in the disturbance. I think it's very clear in the opening statement where the government said that there was brandishing and then goes on to say that Mr. Marzette was part of the dispute and people called the cops on us. That really places him as the cause. I think in the closing… But is there anywhere in the record where Marzette says they called the cops on us? I know that's in the opening statement. What evidence supports that? In our view, the only support for that statement really comes from this pounding and waving statement and the suggestion that Mr. Marzette was part of that dispute. In the closing, the government makes a few other statements that I think tie him to the handling of the gun in that aggressive manner that they portrayed where they say that he was not messing around, that he came to the apartments with a show of force, that he was handling the gun aggressively. In our view, the only support the government had for those statements comes from this notion of pounding and waving, which they tied to Mr. Marzette. And they repeated this narrative not only during the trial but also at the pre-trial detention hearing and then at sentencing. And each time the district court inquired, where is the government linking Mr. Marzette to this dispute? I don't see it. And the district court properly rejected that theory each time it was advanced. Turning briefly to the second issue, the one piece of physical evidence that did link Mr. Marzette to the gun is not supported by an adequate chain of custody. What the jury heard was that the gun was collected during the traffic stop. It was passed to Officer Lawson, who also did not testify at trial and who the record reflects did receive a suspension in relation to this case. Sometime later, the swabs arrived at the Indiana State Police Crime Lab. The jury did not – the gap between the handoff to Officer Lawson and the to ignore. And unlike what the government offered with, for instance, the cheek swabs where it had the person who collected the swab testify, talk about the procedures for taking a sterile swab, for handling the swabs, for sealing the envelopes, none of that was present for this most critical piece of physical evidence. So based on the chain of custody defects and the hearsay issue, we ask this  And I would like to reserve my remaining time for rebuttal. Yeah, you can certainly do so.  Mr. Whalen, good morning. May it please the court. Good morning, Your Honors. Nathaniel Whalen here on behalf of the United States of America. The district court did not plainly err in admitting the statement from the dispatcher to the responding officers, nor did it abuse its discretion in naming the evidence over a chain of custody objection. So this – excuse me. So this court should affirm Mr. Marzette's judgment. Turning to the first issue, Your Honors. Your Honors, if you have the nail right on the head, there's no prejudice here. Mr. Marzette has not shown any prejudice. The statement that he made at trial, as testified to through Officer Baker, is nearly identical to that that was introduced from the 911 dispatcher. It's a statement that there were individuals waving a gun at his sister's apartment. Excuse me. Waving is going to encompass brandishing. Same content for all intent and purposes. When we get to closing arguments, and that was the basis. That's where I'm confused. If we're not using it for truth of the matter asserted, but we're using it to give context to the investigation, what you just proposed is, based on the 911 call, that places the gun in Mr. Marzette's hand. Your Honor, the 911 call didn't place the gun in Mr. Marzette's hand. The 911 call is that there was someone at the apartment pounding on the door with a gun. That's consistent with Mr. Marzette's statement that his sister called and said there was someone at the apartment waving the gun. And so then if you look at our closing argument, the way that we actually used that testimony, we didn't rely on the 911 call to say, look, it was Mr. Marzette. We, in fact, accepted his version of events. That there was someone who showed up at his sister's apartment, and his sister calls him. His sister calls him and says there are individuals with guns. Mr. Marzette then acknowledges he showed up at that same altercation. He said he didn't have guns. Undisputed, he said that. What we then said is, based on the other evidence in this case, the jury should infer that he had a gun when he showed up to help his sister. And what other evidence do we have? I guess I'm struggling. I don't understand the government's theory. Are we pursuing an actual possession theory or constructive possession? Let's maybe answer that question first. Sure. We went on both, Your Honor. Our position was he actually possessed the gun in the apartment, or the jury could at least infer that. If nothing else, though, the jury could infer he constructively possessed the gun as evidenced by the fact that his DNA was on the gun in the car that he had a connection to. Okay. Now, doubling back to Your Honor's first question about the other evidence, the other evidence What evidence do we have of actual possession? That might be helpful. Your Honor, the evidence that we asked the jury to infer of actual possession in this case was the fact that the officers arrive on the premises. The person with the gun went down the alley. The officers see a Chevy Malibu pulled down the alley. They go and stop it. The Chevy Malibu is registered. I'm sorry. Mr. Marzette tells officers that it is a rental car that he has a connection to. So it's his car. Inside the car is a purse, his girlfriend's purse, on which the gun is placed right on top of. There's three people in a car. There are three people in the car, correct, Your Honor. Okay. And so in his girlfriend's purse is a gun that's been placed that ultimately has his DNA on that. Someone he's in a dating relationship with. Correct, Your Honor. Okay. And so from that, we asked the jury to infer that he had the gun in the apartment when he responds to his sister's call about individuals with a gun. Based on a car two blocks down the street with three people, he's not in it, and a gun with a gun inside a woman's purse, and the woman claims that's my gun. Correct. And based on that evidence, that's actual possession? And the DNA. Yeah. That is the argument that we made to the jury about the sufficiency of the actual possession. That's correct, Your Honor. Is the defendant on appeal challenging the sufficiency of evidence? He is not, Your Honor, and that was the point I was about to raise. He is not challenging sufficiency, and I think that's probably a wise move given he didn't make a Rule 29 motion at the trial stage. And so at best, you know, it's waived because it wasn't raised on appeal. At best, even had he raised the issue on appeal, though, this court would be looking under the manifest miscarriage of justice standard, and there's no manifest miscarriage of justice in finding that Mr. Marzett had the gun in this case. Let me ask you about this moment in closing. The government tells the jury that Marzett told Sergeant Baker, quote, I was part of that dispute. These people actually called the cops on us. That's not Sergeant Baker's testimony about Marzett's words. That is correct, Your Honor. That was wrong. It's my recollection that that was the opening and not the closing, and so the evidence did not come in the way that we expected it to. I can't attest 100% as to what happened in the pretrial, and that's certainly not in the record. What we said is that Mr. Marzett relayed to Sergeant Baker, amongst other things, they called the police officers on us. That evidence did not come in the trial. That's correct, Your Honor. But we didn't rely on it in closing. By the time we got to closing, it was clear what Mr. Marzett's testimony was. My sister called me because there were people in the gun, and then he shows up at the apartment. Then we go down the inferential road that we laid in terms of asking the jury to infer that he possessed the gun, none of which relied on the 911 statement, Your Honors. He hasn't shown prejudice in this case to the extent that there was any error that was plain. On the constructive possession, I guess looking back, the indictment alleges on or about with constructive possession. You said you're pursuing both theories. So what evidence do we have that this gun was possessed on or about September 20th of 2019? Well, it's the inferential possessions that we asked the jury to draw that I've just walked through. We do think that that allows the jury to infer that he possessed it on or about that day. How do we get beyond speculation? Well, Your Honor, I think those are reasonable inferences drawn from the record that are beyond speculation, that even if there were a doubt, there would be enough to surmount that. While we also have those, we have the testimony of a DNA expert that says there's a 54% match of the DNA to his gun, to him, I'm sorry, and then she later testifies the higher percentage she can infer as an expert that that means he handled the gun more recently or more often. Again, that goes back to my question. How do we get to on or about September 20th without getting into variance? Well, I don't think we argue that there was any other time outside of that date that he possessed the gun. The constructive possession was more based on a theory that there was no one holding – no one saw him physically holding a gun. We were concerned that there would be some jurors that believed that the fact that he wasn't in physical possession of it at the moment that it's found, they should find that he was not actually in possession of the firearm. And so it's our position that the fact that it was in a car with his girlfriend's purse with his DNA on it, that's enough that the jury could find constructive possession. And so I think where we're collapsing is – or not understanding is that the indictment requires possession on or about. And so if we're asking the jury to infer based on the DNA analysis or analyst that says 54% of Marzette's DNA is on the gun, as the district judge found at sentencing, what evidence do you have that he was brandishing the firearm on September 20th, 2019, on or about? And so is the suggestion being made by the United States that the word recent used by the DNA analyst allowed the jury to make the inference that he possessed it on or about September 20th, 2019? That is one piece of evidence that we believe allows the jury to infer that he possessed the gun on or about that particular day, along with the other evidentiary steps that show him, as we ask the jury to infer, that he had the gun inside the apartment. And so I guess it goes back to how do we get there? Sure. And, Your Honor, maybe I should go back to the analogy that we tried to use in closing argument of multiple people possessing remote control, right? So if I possess remote control, someone else possesses remote control, you put it down. That's still possession. It's joint possession. It might not be direct possession because you don't find it in my hand. So what we ask the jury to infer is based on the fact that we believe is reasonable inference based on the evidence that he had the gun in the apartment. And that's what I'm asking. What evidence? Sure. And it goes back to this. Your Honor, I can't point to anything else besides the fact that someone says at the scene, they went that way with a gun, and then the officer sees a Chevy Malibu pull away at that moment. And Marzetta's not in that Chevy Malibu. That's correct, Your Honor. Absolutely. He's not in the Chevy Malibu, but he does have a connection to the Chevy Malibu because he's a renter. He's on the renter agreement according to his own words. It's in his girlfriend's purse with his DNA on it. The jury could also infer the fact that he comes in and he says, you know, he tries to obfuscate and say, don't look at the gun. You don't need to. My DNA is not going to be on it. Just let me drive the car away. We didn't rely heavily on that. I think that's enough that the jury could certainly add it as kind of a feather on the scale. Ultimately, though, these are sufficiency questions, Your Honor, and I don't think that there's a sufficiency argument that's been preserved in this case in any way, shape, or form. The question is, though, reasonable probability of a different outcome. That's the standard. Has there been a miscarriage of justice happening by the reasonable probability that if the jury had not heard 911 call someone waving and banging on the door with a firearm, what puts the gun in Mr. Marzetta's hand other than a car registered to him that's driving down the alleyway that he is not in? Sure, Your Honor, but the 911 call doesn't put the gun in his hand. Okay. And so what we're saying is, I understand Your Honors might have some concerns about the evidence in this case. I'm not having concerns about the evidence. I'm having concerns about the reasonable probability if we agree that the 911 call had not come into evidence, there was no limiting instruction directing the jury how to control, listen to this information, what other evidence did the jury have to reasonably infer? And if it had not come in, is there a reasonable probability of a different outcome? So under the plain error review standard that we're required to look at, that's the concern. That's what I'm needing the government to answer. I understand, Your Honor, and to the extent I have it, I apologize. What I'm saying, though, is the evidence is the same with or without the 911 call. If you take out the 911 call, we have the gist of the same evidence from Marzett's mouth himself, that there's someone inside the apartments waving a gun. Right? That's what he says his sister says. The 911 call isn't any different. Someone inside the apartments waving a gun. Admittedly, it's slightly different language than when it says brandishing and pounding on the door, but it's the same content as Mr. Marzett said to Sergeant Baker himself.  there's someone with a gun. Right? And so that, again, confirms that there's someone at the apartment complex that has a gun. It is the same gist for the purpose of the possession case as the 911 call. So if you take out the 911 call, it's our position that the evidence is virtually identical. Unless this Court has any questions on that issue or the other issue, I guess we'd rest on our wreaths on that and ask that this Court affirm Mr. Marzett's sentence and judgment. Thank you. Mr. Whelan, thanks to you. Ms. Wienkoski, you went over a little bit with Mr. Whelan. We'll give you a couple minutes. Thank you, Your Honor. Just two points I would like to raise. The government says that during the closing they accepted Mr. Marzett's version of events. It is true that they did acknowledge he was called over by his sister, but I think the way that they presented this case in closing by saying that he was handling the gun aggressively, that he was not messing around, that he arrived with his show of force coupled with the introduction of that pounding and waving statement earlier caused prejudice. And even though he did acknowledge that his sister called him over, the government said on page 145 of the record he confronted the neighbor. He was part of the altercation. He was part of the dispute. And that the pounding and waving statement had already been introduced. The die had already been cast. The jury had heard it. There was no limiting instruction. So I don't think the presentation at closing clarified that issue at all for the jury. And this court has instructed that district courts need to exercise vigilance and be aware when this type of background information is used. The second point that came up is that sufficiency of the evidence challenge wasn't raised here. That's true. We did not present a sufficiency challenge, but the weakness of the government's case, and I think there are significant weaknesses certainly as an actual possession case and very much so as a constructive possession case, particularly with the on or about issue. The weakness of the government's case, even if not a sufficiency challenge, goes to the prejudice in this case, which is plain error that Mr. Marzat's substantial rights were affected by the statement. The presence of DNA evidence on the trigger only at best would show that Mr. Marzat may have touched the gun at some point in the past. But as your Honor was asking about, it does not show that he constructively possessed the gun on or about September 20th, 2019 at the apartment complex. And for these reasons and the chain of custody, we ask that this court reverse Mr. Marzat's conviction. Malkowski, thanks very much. Thank you, Your Honor. Did you take this case on appointment from the court? Yes, Your Honor. Okay. We very much appreciate you doing so, appreciate the quality of your advocacy, the service to your client and the court. Thank you. Mr. Whalen, as always, thanks to you. We'll take the appeal under advisement.